UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EMPIRE TECHNOLOGICAL GROUP LIMITED,<br><br>Plaintiff and Counter Defendant,<br><br>v.<br><br>LIGHT & WONDER, INC., *et al.*,<br><br>Defendants and Counter Claimants. | Case No. 2:22-cv-00923-MMD-BNW<br><br>ORDER |

## I. SUMMARY

Plaintiff and Counter Defendant Empire Technological Group Limited sued Defendants and Counter Claimants Light & Wonder, Inc. and SG Gaming, Inc. (collectively, "L&W") for allegedly infringing at least claims 1 and 11 of United States Patent No. 11,341,807 ("the '807 Patent"), titled "DISPLAY ASSEMBLY FOR RELEVANT MESSAGING FOR GAMING APPARATUS AND METHODS THEREOF," by making, using, offering for sale, or selling the products advertised as "i-Table", "I-Score Plus", and "I-Score Ultra." (ECF No. 1 ("Complaint") at 2, 5-6.) Before the Court is L&W's motion for summary judgment, contending that the '807 Patent is invalid because L&W's accused i-Score Plus product was publicly used, sold, and otherwise available before the asserted priority date of the '807 Patent (ECF No. 31 ("Motion")),[1] along with two corresponding motions to seal (ECF Nos. 32, 38).[2] Because Empire accuses the i-

---

[1]This document contains redactions. L&W filed an unredacted, sealed version at ECF No. 33. Empire filed a redacted version of its response at ECF No. 37, accompanied by an unredacted, sealed version at ECF No. 38-1. L&W filed a reply. (ECF No. 41.) The Court will generally refer to the unredacted, sealed versions of the Motion and response in this order, while noting they are sealed.

Score Plus of infringement, the Court finds there is no genuine dispute of material fact that the i-Score Plus was 'in public use' before the priority date of the '807 Patent, and as further explained below, the Court will grant the Motion.

## II.  BACKGROUND

Empire and L&W both make gaming equipment. This case focuses on sophisticated card tables (sophisticated in that they include digital displays that give prospective players game information) that could, for example, be used to offer Baccarat games in a casino. The parties stipulated to a bifurcated case schedule where they would first explore the invalidity argument ultimately presented in the Motion. (ECF No. 23.) They later stipulated to stay this case until the Court resolves the Motion. (ECF No. 46.)

## IV.  DISCUSSION

The Court first addresses the Motion, and then the motions to seal.

### A.  The Motion

As noted at the outset, L&W argues the '807 Patent is invalid primarily because its accused i-Score Plus was in public use before April 10, 2017, relying on Empire's infringement allegations and pointing specifically to several demonstrations of the i-Score Plus at invitation-only events and a trade show, and one set of sales to a cruise line. (ECF No. 33 (sealed).) Empire counters that L&W's motion is premature because L&W currently denies infringement of the '807 Patent, the Court has not conducted claim construction, and the issue of public use is replete with factual considerations, otherwise arguing the Motion should be denied because the various events L&W proffers are not public uses and L&W has not proven that the versions of the i-Score Plus shown at the various events meets the limitations of the claims of the '807 Patent. (ECF No. 38-1 (sealed) at 7-9.) The Court agrees with L&W in pertinent part.

---

[2] Neither side responded to the other side's motion to seal. The Court addresses both motions to seal in this order.

2

The appropriate resolution of the Motion turns, to a large extent, on L&W's threshold contention that it may rely on Empire's infringement allegations in its Complaint to meet L&W's burden to show that the i-Score Plus meets applicable limitations of the '807 Patent without admitting or conceding those allegations are true. (ECF No. 33 (sealed) at 19-20.) Empire only addresses this key contention in a footnote, arguing that 'no caselaw' supports L&W's position, that *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363 (Fed. Cir. 2000) is distinguishable because it is an on-sale bar case, not a public use case, because the *Vanmoor* defendants conceded infringement, and the product on sale was identical to the pre-critical date product. (ECF No. 38-1 (sealed) at 23 n.1.)

Contrary to Empire's argument, sufficient caselaw supports L&W's position—and Empire points to no contrary caselaw of its own. To start, while it is true that *Vanmoor* is an on-sale bar case, its pertinent reasoning applies to the Motion by analogy. The *Vanmoor* court found that the defendants' burden to prove that the pertinent products anticipated the patent-in-suit was satisfied by the plaintiff's allegation that the accused products infringed the patent because the entire basis of the plaintiff's patent infringement claim was that the accused products infringed the patent. *See* 201 F.3d at 1366. The allegation that the i-Score Plus infringes the '807 Patent is also integral to Empire's Complaint here. (ECF No. 1.) And in *Vanmoor*, like here, it was the defendants who placed the allegedly infringing products on sale before the critical date.[3] *See Vanmoor*, 201 F.3d at 1366. *Vanmoor* is instructive here.

///

---

[3] Empire also argues *Vanmoor* is distinguishable because there, the defendants conceded infringement. (ECF No. 38-1 at 23 n.1.) But in *Vanmoor*, the defendants only conceded infringement for purposes of their summary judgment motion, and otherwise denied infringement. *See* 201 F.3d at 1366. That is essentially the posture of the Motion. L&W does not explicitly concede infringement for purposes of the Motion, but does as much by arguing that the Court need only look at Empire's allegations in the Complaint later reiterated in response to an interrogatory. (ECF No. 33 (sealed) at 20.) Regardless of the precise phrasing of the challenge, both in *Vanmoor* and here, the defendants focused on the plaintiff's allegations. And the United States Court of Appeals for the Federal Circuit agreed that was the right approach in *Vanmoor*. The Court finds it is the right approach here as well.

Moreover, L&W also cited—and Empire declined to address—the Federal Circuit's unpublished opinion in *Bennett Regul. Guards, Inc. v. Canadian Meter Co.*, 184 F. App'x 977, 978 n.1, 2006 WL 1667946 (Fed. Cir. 2006). (*Compare* ECF No. 33 (sealed) at 19 *with* ECF No. 38-1 (sealed).) *Bennett* was a public use case, and there, the Federal Circuit agreed with the district court that "[w]hen the anticipatory reference is the accused product, the Defendant's burden [of showing that the anticipatory reference contains each and every claim element] is satisfied by the Plaintiff's infringement allegations in the Complaint that the accused product embodies the claimed invention." 184 F. App'x 977, 978 n.1 (quoting the district court). While this opinion is unpublished, the Court gives it significant persuasive weight because the facts are similar here. The accused i-Score Plus is also the device that provides the allegedly anticipatory use. (*Compare* ECF No. 1-3 at 4 (accusing the i-Score Plus of infringement in a claim chart when used in conjunction with other L&W products) *with* ECF No. 33 (sealed) (arguing the i-Score Plus was in public use before the critical date of the '807 Patent).) That said, the *Bennett* court ultimately found summary judgment was inappropriately granted because genuine issues of material fact existed as to whether the proffered public uses were public. *See Bennett*, 184 F. App'x 977, 978, 982. But regardless, *Bennett* still supports L&W's position that Empire's infringement allegations meet L&W's burden to show that the i-Score Plus meets each and every claim element of the '807 Patent.

Other district courts have reached similar conclusions. For example, the District of Delaware held, "[a]n admission by the patentee that a particular product practices the claimed invention is sufficient to satisfy the defendant's burden that the product anticipates the claim for purpose of applying the on sale bar and public use bar." *Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 716 (D. Del. 2011), *aff'd*, 678 F.3d 1300 (Fed. Cir. 2012) (citing *Vanmoor*, 201 F.3d at 1366). And both the Eastern District of Pennsylvania and the Northern District of California have reached similar conclusions in the context of on-sale bar cases. *See Gammino v. Sprint Commc'ns Co. L.P.*, Case No. CIV. 10-2493, 2011 WL 3240830, at *2 (E.D. Pa. July 29, 2011); *Big Baboon, Inc. v.*

*SAP Am., Inc.*, Case No. 4:17-CV-02082-HSG, 2019 WL 1791421, at *2 (N.D. Cal. Apr. 24, 2019), *aff'd*, 819 F. App'x 928 (Fed. Cir. 2020). In sum, the weight of the persuasive authority the parties pointed to or the Court was otherwise able to locate on its own convinces the Court that L&W has met its burden to show that the i-Score Plus meets each and every claim element of the '807 Patent by referring back to Empire's allegations in the Complaint.

      This approach is also consistent with the general principle that, "[a] statement in a complaint . . . is a judicial admission[.]" *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Empire specifically accuses the i-Score Plus of infringement in its Complaint as the display component of a system also consisting of the i-Table and i-Shoe, specifically because the i-Score Plus includes light bars around it that can display different colors corresponding to different game outcomes, including a hollow region with multiple lights in it. (ECF No. 1 at 5-7.) It would be both inconsistent with the general principle of treating allegations in complaints as judicial admissions and indeed odd to force L&W to prove the i-Score Plus infringes to prevail on its public use bar invalidity motion when Empire already alleges that it does. Empire's allegations satisfy L&W's burden of demonstrating anticipation.

      That brings the Court to the other key question for purposes of resolving the Motion: whether L&W has met its summary judgment burden to show that the accused i-Score Plus was in public use before the critical date of the '807 Patent. "'An invention is in public use if it is shown to or used by an individual other than the inventor under no limitation, restriction, or obligation of confidentiality.'" *Minerva Surgical, Inc. v. Hologic, Inc.*, 59 F.4th 1371, 1377 (Fed. Cir. 2023) (quoting *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008)). "To determine whether this occurred, the court considers, '*inter alia*, the nature of and public access to activities involving the invention [and] confidentiality obligations imposed upon observers.'" *Id.* (citations omitted).

      L&W proffers several purported public uses of the i-Score Plus in its Motion: (1) the Atlantic City Pre-Global Gaming Expo event in August 2016; (2) the Southern Road

Show; (3) the September 2016 Global Gaming Expo in Las Vegas; (4) an August 2016 sale to Norwegian Cruise Lines revised to include versions of the i-Score Plus with lighting kits in October 2016 following the Global Gaming Expo; (5) a customer demonstration at the Bicycle Casino in October 2016; and (6) a presentation at L&W's March 2017 Empower conference. (ECF No. 33 (sealed) at 6-17.) Empire responds to each of these purported public uses, contending for various reasons that they are not 'public uses.' (ECF No. 38-1 (sealed) at 26-32.) The Court agrees with L&W that at least L&W's display and demonstration of the i-Score Plus at the September 2016 Global Gaming Expo in Las Vegas constituted a public use.

      L&W points to clear and convincing evidence in its Motion that its display and demonstration of the i-Score Plus at the September 2016 Global Gaming Expo constituted a public use. *See, e.g.*, *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006) ("a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise."). To start, the version of the i-Score Plus shown at the 2016 Global Gaming Expo was functional. William Jones, Director of Software Engineering at L&W, testified that, while he could not say for sure, he thought the "proof of concept" of the accused i-Score Plus shown at the 2016 Global Gaming Expo had all the same features as the product later sold under that name, but had not gone though quality assurance testing. (ECF No. 33-1 (sealed) at 11-12, 29-30.) Jones also wrote back in August 2016 that the lighting rig addition to the i-Score Plus would have the ability to signal with its surrounding lights whether a table was open or closed, whether the dealer or players was winning, and the table limit. (ECF No. 33-5 (sealed) at 57.) There was an internal meeting at L&W in September 2016 to display and solicit feedback on the new lighting rig for the i-Score Plus. (ECF No. 34-4 (sealed) at 2.) And Colin Helsen, L&W's VP and Managing Director of the Global Utility Products Division, testified that L&W presented a functional version of the updated i-Score Plus with the

lighting rig on it (key to some of the pertinent claim limitations) at the 2016 Global Gaming Expo. (ECF No. 33-2 (sealed) at 9-12.)

Second, many people attended the 2016 Global Gaming Expo. Helsen testified that the annual global gaming expo "attracts tens of thousands of individuals to Las Vegas to view and interact with the industry's new products and offerings." (ECF No. 31-28 (sealed) at 4.) Jones also testified that "there's literally hundreds of people that come and go all the time" at the Global Gaming Expo. (ECF No. 33-1 (sealed) at 10.) Attendees of the 2016 Global Gaming Expo were not under any confidentiality restrictions. (ECF No. 31-28 (sealed) at 4.)

Third, L&W displayed and demonstrated a version of the i-Score Plus with the lighting rig at the 2016 Global Gaming Expo—indeed, with both a horizontal and vertical screen configuration. (ECF No. 33-2 (sealed) at 9-10.) In addition to Jones and Helsen, L&W employees Matthew Lucchetti (Senior Product Manager at L&W) and Michael Vizzo (Associate Product Manager at L&W) demonstrated the accused i-Score Plus with the lighting rig at the 2016 Global Gaming Expo. (ECF Nos. 33-3 at 11, 33-4 at 11, 33-1 at 10-11 (all filed under seal).) Indeed, both these individuals and the i-Score Plus with LED light tubes around the outside are visible in authenticated photographs of L&W product demonstrations at the 2016 Global Gaming Expo included in L&W's Motion. (ECF No. 33 (sealed) at 9-10.) Helsen also specifically testified that he demonstrated the functionality of the lighting system around the display screen to attendees of the 2016 Global Gaming Expo. (ECF No. 33-2 (sealed) at 15-16.) Vizzo further testified that he demonstrated the edge lighting feature to attendees as well. (ECF No. 33-3 (sealed) at 8-10.) Moreover, at least two publicly available YouTube videos of the 2016 Global Gaming Expo show the i-Score Plus with the lighting rig around the display screens— L&W attached screenshots to its Motion. (ECF No. 31-33 (sealed) at 2.) The screenshots are striking because in addition to themselves being public (in that they were posted

online)[4] they show how public the display of the i-Score Plus with the lighting around the screen was at the 2016 Global Gaming Expo:

(*Id.*) In sum, L&W has proffered sufficient evidence with its Motion that a version of the accused i-Score Plus with the key lighting around the screen was in public use at the 2016 Global Gaming Expo.

Empire's arguments to the contrary are unpersuasive. To start, Empire both proffers 'additional material facts' and more generally argues that the display of the accused i-Score Plus at the 2016 Global Gaming Expo was not a public use because the attendees were all members of the gaming industry, and not members of the general public. (ECF No. 38-1 at 8, 14-15, 29.) But this is not the law. The pertinent question is instead whether (as in this case) the i-Score Plus was shown to people under no confidentiality restrictions. *See Minerva Surgical*, 59 F.4th at 1377, 1379-80. Indeed, the Federal Circuit recently held in *Minerva Surgical* that the display of an invention to

---

[4]Empire does not challenge their authenticity or argue they are not properly authenticated. Indeed, Empire does not mention the YouTube videos at all in its response. Moreover, the YouTube videos may independently demonstrate anticipation. *See, e.g., HVLPO2, LLC v. Oxygen Frog, LLC*, Case No. 4:16CV336-MW/CAS, 2018 WL 11413543, at *1 (N.D. Fla. May 28, 2018) (denying motion in limine and finding that YouTube video constituted a printed publication within the meaning of 35 U.S.C. § 102(a)).

knowledgeable people at an industry trade show was a public use. *See id.* at 1378-80. The Court accordingly rejects Empire's argument that L&W's display of the i-Score Plus at the 2016 Global Gaming Expo was not a public use because it was a trade show. The evidence shows industry participants saw the i-Score Plus at the 2016 Global Gaming Expo under no confidentiality restrictions.

Empire also argues that the question of public use is "replete with factual considerations" and thus inappropriate for resolution at summary judgment. (ECF No. 38-1 at 7, 21 (citing *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1355-57 (Fed. Cir. 2013)).) But to pick just one example, the *Minerva Surgical* court affirmed the district court's summary judgment ruling that "there was no genuine issue of material fact that the invention of claim 13 was 'in public use' prior to the critical date of the" asserted patent. 59 F.4th at 1380. There is thus no categorical rule against finding public use on summary judgment w. *See id.* Instead, the rule is the same as the general summary judgment rule—summary judgment "is appropriate when, drawing all justifiable inferences in the nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* at 1377; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). L&W met its initial burden to show there is no genuine dispute of material fact by proffering the evidence summarized above. It thus became incumbent upon Empire to "produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists[.]" *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991) (citation omitted). But Empire has not done so. Reliance on a general preference for the resolution of factual disputes at trial does not meet this standard.

The remainder of Empire's argument pertinent to the 2016 Global Gaming Expo is generally directed at whether the i-Score Plus displayed at the 2016 Global Gaming Expo meets pertinent limitations of the '807 Patent. (ECF No. 38-1 (sealed) at 15-16, 29-33.) But this argument is irrelevant because the Court concluded above that L&W may rely on Empire's allegations to establish anticipation.

9

The key cases upon which Empire relies are also distinguishable. The Federal Circuit's determination that an unreleased variety of grape grown on a public roadside was not in public use turned on its commonsense finding that "grape varieties cannot be reliably identified simply by viewing the growing vines alone[.]" *Delano Farms Co. v. California Table Grape Comm'n*, 778 F.3d 1243, 1249 (Fed. Cir. 2015). That makes sense. But here, Empire does not dispute (and indeed, relies upon the fact that) attendees of the 2016 Global Gaming Expo were all industry insiders, and does not even respond to L&W's pictures and YouTube videos proffered along with its Motion showing the i-Score Plus with LED lights around the display screen hooked up to a card table with an automatic shuffler and some sort of table controller. (ECF No. 33 (sealed) at 8-10, 22-24 (relying on the evidence described above that Empire does not argue is inadmissible or unauthenticated).) Unlike folks driving past a vineyard, industry insiders at the 2016 Global Gaming Expo would understand that the i-Score Plus had lights that displayed information around its display screens, particularly given L&W's employees' unrebutted testimony described above that they demonstrated this feature to attendees of the trade show. Thus, *Delano Farms* is factually distinguishable.

The same goes for *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 967 (Fed. Cir. 2020). (ECF No. 38-1 (sealed) at 22-23, 27 (relying on this case).) There, the Federal Circuit held genuine disputes of material fact precluded summary judgment on public use because, while the general public was given tours of a factory in which an anticipating process was being used, "no evidence suggest[ed] that any of these guests was a skilled artisan[.]" *BASF*, 955 F.3d at 967. In addition, the parties sufficiently disputed in *BASF* "whether the remaining elements of the Sanwet® Process were known, and to the extent they were not, whether they were concealed from the public on these tours, in newspaper articles, and in the commemoration video." *Id.* Again, the attendees of the 2016 Global Gaming Expo receiving demonstrations of the accused i-Score Plus from L&W employees were industry insiders. Thus, on the question of whether the 2016 Global Gaming Expo constituted an invalidating public use, *Minerva Surgical* is more

instructive than *BASF*, where the plaintiff "allowed knowledgeable individuals to scrutinize the invention enough to recognize and understand the [pertinent] technology [the plaintiff] later sought to patent." 59 F.4th at 1379.

In sum, the Court will grant the Motion because L&W's display and demonstration of the accused i-Score Plus at the 2016 Global Gaming Expo was an invalidating prior public use of the '807 Patent within the meaning of 35 U.S.C. § 102(a)(1).

### B. The motions to seal

The Court now addresses the parties' motions to seal. (ECF Nos. 32, 38.) As both parties seek to seal portions of their motion for summary judgment and response thereto, along with certain exhibits attached to them, the parties must provide compelling reasons, supported by specific factual findings, for the Court to grant their sealing requests. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010).

The Court will grant L&W's motion to seal (ECF No. 32) because L&W has presented compelling reasons for sealing supported by specific factual discussion of the documents it seeks to file under seal. Specifically, L&W seeks partial redaction of its Motion and to file certain exhibits under seal because they contain commercially sensitive information and potential trade secrets. (*Id.* at 2.) These are compelling reasons. *See, e.g.*, *Selling Source, LLC v. Red River Ventures, LLC*, Case No. 2:09-cv-01491-JCM, 2011 WL 1630338, at *6 (D. Nev. Apr. 29, 2011) (granting motion to seal documents containing "information related to the parties' propriety business operations and trade secrets" under compelling reasons standard).

But the Court will deny without prejudice Empire's motion to seal (ECF No. 38) in which Empire seeks to seal deposition transcripts and references to them in Empire's responsive brief that "contain information designated as confidential by Defendants." (*Id.* at 3.) The mere existence of a stipulated protective order and L&W's designation of a document as confidential, *alone*, are insufficient grounds to seal a document. *See Heath v. Tristar Prod., Inc.*, Case No. 2:17-cv-02869-GMN-PAL, 2019 WL 12311995, at *2 (D.

11

Nev. Apr. 17, 2019). To overcome the strong presumption in favor of public access, Empire must make a particularized showing as to why each exhibit and references thereto in its response should be sealed and provide compelling reasons, supported by specific factual findings, for its request. *See Kamakana*, 447 F.3d at 1178. Empire has not met this burden.

The Court accordingly denies Empire's motion to seal without prejudice, but will not immediately order any material unsealed because Empire appears to have filed the motion out of an abundance of caution, respecting L&W's potential concerns with Empire including material L&W considers confidential with its briefing—and because L&W did not weigh in on Empire's motion. Thus, the Court cannot ascertain whether the pertinent information should remain sealed. The Court accordingly orders Empire to file a renewed motion to seal within 15 days intended to meet the appropriate standard, and L&W to file a response to that renewed motion within another 15 days.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants Light & Wonder, Inc., and SG Gaming, Inc.'s motion for summary judgment (ECF No. 31) is granted.

It is further ordered that United States Patent No. 11,341,807, titled "DISPLAY ASSEMBLY FOR RELEVANT MESSAGING FOR GAMING APPARATUS AND METHODS THEREOF," is invalid as described herein.

It is further ordered that Defendants are entitled to summary judgment on Plaintiff's patent infringement claim for infringement of the '807 Patent.

It is further ordered that Defendants' motion to seal (ECF No. 32) is granted.

It is further ordered that Plaintiff's motion to seal (ECF No. 38) is denied without prejudice.

It is further ordered that this case is no longer stayed.

It is further ordered that Plaintiff must file a renewed motion to seal within 15 days of the date of entry of this order, and Defendants must file a response to that renewed motion within another 15 days.

It is further ordered that the parties must file an updated, proposed joint scheduling order within 30 days of the date of entry of this order.

DATED THIS 7th Day of December 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE